Robert L. Baumann, SBN 261665
rbaumann@adamsferrone.com
**ADAMS FERRONE & FERRONE**
4333 Park Terrace Drive, Suite 200
Westlake Village, CA  91361
Telephone: (805) 373-5900
Facsimile:  (818) 874-1382

Attorney for Plaintiffs,
BRYAN ROSSY, et al.

## UNITES STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN ROSSY, MARK GUTIERREZ, JARED WAASDORP, and DOUGLAS MAIRS, <br><br> Plaintiffs, <br> vs. <br><br> CITY OF BISHOP, a public agency and/or municipal corporation; CHRIS CARTER, individually and as Police Chief; TED STEC, individually and as Police Chief; JIM TATUM, individually; PAT GARDNER, individually; and DOES 1 THROUGH 10, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF INDIVIDUAL CIVIL RIGHTS AND LIBERTIES** <br><br> **DEMAND FOR JURY TRIAL** |

**I.**

**PREFATORY**

1.      This is an action for damages and injunctive relief for personal injury suffered by the Plaintiffs as a result of wrongful retaliation for the lawful exercise of individual civil rights and liberties of free expression and participation in labor, union, and political activities and due to engaging in protected activities.

1

## II.

## JURISDICTION AND VENUE

2.      Plaintiffs' action is authorized by 42 U.S.C. § 1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. § 1343(4), providing for the protection of civil rights. Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.  This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§ 2201 and 2202.  Venue is proper in the Eastern District of California in that the wrongs alleged herein occurred within the City of Bishop, within the Eastern District.

## III.

## PARTIES

3.      Plaintiffs Bryan Rossy ("Rossy"), Jared Waasdorp ("Waasdorp"), Mark Gutierrez ("Gutierrez") and Douglas Mairs ("Mairs") were, and at all relevant times unless otherwise mentioned herein were, employed by Defendant City of Bishop and the Bishop Police Department in the capacity of Police Officers with Mairs holding the position Police Sergeant.  As such they are entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights Act ("POBOR").  At all times relevant to the allegations contained herein, Plaintiffs have been a resident of Inyo County.  Plaintiffs' home address is confidential.

4.      Defendant City of Bishop ("City") is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Inyo.  The Bishop Police Department ("Department") is an operating department and a public agency of the City of Bishop.  At all times relevant herein

FLSA COMPLAINT

for all purposes connected with the management of employment relations matters within the Department, City delegated its final policy-making authority to Defendants.  City adopted and ratified each of his decisions as alleged herein as its own policies, customs, practices or decisions, as if the same had been promulgated directly by City.

5.    Defendants Chris Carter ("Carter") and Ted Stec ("Stec") were at all times relevant as they are mentioned the Chief of Police for the City of Bishop and the Bishop Police Department.  In doing the things alleged herein, Carter and Stec acted under color of state law, within the course and scope of their employment, and as an official policy-maker for the City and/or the Department.  As Department Heads and the highest ranking sworn law enforcement official, Carter and Stec, along with and in conjunction with other Defendants, were vested with policy-making authority over actions such as the ones at issue in this complaint.

6.    Defendant Jim Tatum ("Tatum") was at all times relevant, as he is now, the City Administrator for the City of Bishop.  In doing the things alleged herein, Tatum was not acting in his role as City Administrator but was instead acting in his own personal capacity.

7.    Defendant Pat Gardner ("Gardner") was at all times relevant the City Mayor for the City of Bishop. In doing the things alleged herein, Gardner was not acting in his role as Mayor but was instead acting in his own personal capacity.

8.    Pursuant to Kentucky v. Graham, 473 U.S. 159, 165 (1985), Carter, Stec and Tatum are being sued personally (and individually) and in their official capacity. To establish personal liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.  To establish an official-capacity action, where a governmental entity is liable under §1983, it is enough to show that the entity itself is a "moving force" behind the deprivation.

///

FLSA COMPLAINT

9. More specifically, the adverse actions taken against the Plaintiffs as fully explained below, were taken by Carter, Stec, Gardner and Tatum. The allegations made here are based on information and belief.

10. Defendant DOES 1 through 10 are not known or identified at this time. On information and belief, Plaintiffs allege that each DOE is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein. When the true names and capacities of said Defendants become known, Plaintiffs will seek relief to amend this complaint to show their true identities in place of their fictitious names as DOES 1 through 10.

11. Defendants, and each of them, were the agent, employees and servants of every other Defendant. Defendants acted in the course and scope of said agency, service and employment at all relevant times.

## IV.

## FACTS COMMON TO ALL COUNTS

12. Carter was the Chief of Police during all relevant time periods until October 2015. In October 2015 Stec became interim Chief of Police until being appointed by City Council in January 2016.

13. Plaintiffs are police officers who blew the whistle on rampant internal corruption occurring within the City of Bishop and the Bishop Police Department. Plaintiffs exposed cronyism, the Department's cover-up of a Civil Rights Violation and several quid pro quo arrangements. As a result of the Plaintiffs' whistleblower statements, the Department initiated an investigation and ultimately proposed discipline against the Plaintiffs in an effort to hinder Plaintiffs, and any future parties, from exercising their first amendment rights to expose corruption within the Department.

14. At the time Rossy was the President of the Bishop Police Officers Association ("Association" or "POA"). As part of his duties in the role as POA

4

FLSA COMPLAINT

President, Rossy represented other officers' interests, claims and grievances, as well as the Association's as a whole, during disciplinary or grievance proceedings, or during many written and verbal conversations with Defendants and the City's representatives.

15.    As a Board Member, Rossy has consistently engaged in numerous protected activities, which include but are not limited to: speaking out at meetings about matters of public concern as well as matters bearing on the efficiency and sustainability of the City, the workforce, the Department; filing, assisting with and propounding legally protected actions, including but not limited to grievances, unfair labor charges, and the like.  At all times, Rossy's position as Association President rendered his activities on their behalf protected under state and federal law, including but not limited to the California and United States Constitution.

16.    At all relevant times, Plaintiffs Waasdorp, Guiteirrez and Mairs were all members of the POA and engaged in speech supportive and similar to that of Rossy.

17.    On or about September 16, 2015, the Plaintiffs drafted and published a "Letter of No Confidence" (Attachment A) alleging corruption by Carter, Tatum and City Councilman Pecsi. The letter was published in the local media outlets. Upon being published, on or about October 3, 2015, Carter and Tatum issued Plaintiffs a written notice advising them they were all being placed on administrative leave due to the the letter of no confidence.  Thus, Defendants have admitted that they took this adverse action due to the protected speech.  In *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013), the Ninth Circuit held as a matter of law that a vote of no confidence by a union is protected speech under the First Amendment.

18.    On or about October 9, 2015 the Plaintiffs were given written notices by Gardner, acting under the authority of Tatum and Carter, advising they were "witnesses" to an internal investigation into their allegations of corruption within

FLSA COMPLAINT

the City and Department.

19.    On October 21, 2015 the Plaintiffs were ordered to City Hall to give involuntary statements to investigator Jeffrey Johnson ("Johnson") of Norman A. Traub and Associates. In the notices given to the Plaintiffs, they were again advised there were witnesses as the purported purpose of the investigation was to investigate the allegations made by the Plaintiffs in the letter of no confidence. On this day all four Plaintiffs gave involuntary statements to the investigator relating to the allegations they made collectively. Plaintiffs described in detail their whistleblower activities as outlined in the letter of no confidence relating to corruption within the Department as well as the within the City. Specifically the Plaintiffs outlined the corrupt actions of Carter, Tatum and Pecsi. (See Attachment A)

20.    Even though the Plaintiffs were noticed as witnesses for the investigation, on or about November 22, 2016 the Plaintiffs each received a letter of intent to discipline based on their letter of no confidence. Amongst other issues surrounding the letter, the notice advised the Plaintiffs that due to their participation in creating and publishing the letter of no confidence, the Plaintiffs were each being suspended for 24 hours with Mairs being advised he would be demoted from Sergeant as well.

21.    The discipline notices to the Plaintiffs made it clear that they were noticed as "witnesses" as a guise as the witness interviews were really administrative interrogations which the Department never noticed them of and were ultimately used against them to justify discipline.

22.    The discipline was recommended by Stec, as he had replaced Carter at this point in time, as a continuing effort by the previous administration to dissuade officers, to include the Plaintiffs, from engaging in whistle blowing activities in the future.

///

6

FLSA COMPLAINT

23.    On or about October 19, 2016 Stec held a formal pre-disciplinary hearing with the Plaintiffs in which the Plaintiffs argued their activity was protected First Amendment free speech and further they were protected as whistleblowers. Ultimately Stec ignored the representations made by the Plaintiffs and imposed the discipline against the Plaintiffs in a notice made on or about November 22, 2016.

## V.

## CAUSES OF ACTION

### First Cause of Action

### *42 U.S.C. § 1983*

*Against Defendants Carter, Stec, Gardner and Tatum*

24.    Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

25.    Carter has deliberately harassed, discriminated and retaliated against Plaintiffs by through intimidation, bullying, harassment and cronyism. Once the Plaintiffs exposed the corruption on behalf of Carter, he immediately placed the Plaintiffs on administrative leave although they were only witnesses and victims to the corruption and policy violations on behalf of Carter and Tatum. Carter and Tatum initiated the investigation against the Plaintiffs after placing them on administrative leave. Ultimately Stec imposed discipline against the Plaintiffs on or about November 22, 2016. On repeated occasions, prior to the letter of no confidence, the Plaintiffs had approached Tatum to advise him of the corruption and favoritism on behalf of Carter, to which Tatum took no action.

26.    In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression and to petition the government. Specifically, Defendants have taken the aforementioned action against Plaintiffs in direct retaliation for, and in response to his various protected activities, some of

FLSA COMPLAINT

which have been described herein.  There are of course additional activities which have not been included in this claim.  The acts and omissions of Defendants, and each of them, were done by Defendants under color of state law in their capacity as a municipality chartered under state law, and as policy making authorities to which Defendant City delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

27.     The acts and omissions described above were taken by the City's official policy maker as a member charged with such responsibility.  It was or should have been plainly obvious to any reasonable policy making official of the City that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiffs' clearly established constitutional and statutory rights.  In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of his rights and to the injurious consequences likely to result from a violation of said rights.  General and special damages are sought according to proof.  Punitive damages are sought against the individual defendant, according to proof.

28.     These allegations, as well as any reasonable inferences from them, must be taken as true.  And, if they are taken as true, they clearly show that the adverse actions taken against the Plaintiffs were taken by individuals whose actions represent official policy. Here, it is without dispute that the City Administrator and the Police Chief's possessed the requisite authority to implement the alleged adverse employment actions.

29.     Plaintiffs have no speedy nor adequate remedies to compel the relief sought herein, however Plaintiffs filed a Claim for Damages which has been rejected by Defendants.

///

8

FLSA COMPLAINT

30.    It was or should have been plainly obvious to any reasonable policy making official of City that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiffs' clearly established constitutional and statutory rights.  In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to free expression, association and assembly. Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of Plaintiffs' rights and to the injurious consequences likely to result from a violation of said rights.  General and special damages are sought according to proof.  Punitive damages are sought against the individual defendants, according to proof.

31.    The Plaintiffs have no plain, speedy nor adequate remedy at law to prevent future violations of his civil rights, and therefore seeks extraordinary relief in the form of permanent injunctions, as hereafter described.  Damages alone are inadequate and injunctive relief is sought to command Defendants to rescind the investigation against the Plaintiffs with the removal of all investigative documents from their personnel files. Further Plaintiffs request reinstatement of all benefits, in order to place them in a position he would have been in, absent the unlawful conduct by Defendants.

## VI.

### Second Cause of Action

#### *42 U.S.C. 1983*

*Against Defendant City of Bishop*

32.    Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

33.    Under current City policy and practice, the Chief of Police is delegated the final policy making authority with regard to imposing discipline.

9

FLSA COMPLAINT

The City's stated policy is that The Chief of Police has the ability to "determine the amount of discipline…"

34.    No other City employee or official can implement disciplinary action against an officer or are involved in any disciplinary action in any way unless the Chief chooses to delegate such authority to the City Administrator.  The City's stated policy is that "the ultimate responsibility" for discipline rests with the Chief of Police.  The policy is that these individuals shall be considered "the ultimate authority" on behalf of the City with respect to conducting investigations and administering discipline.  Policy and practice within the City are that these individuals maintain "the ultimate authority" with respect to the functioning of the City and the Department, as they are the highest officials employed by and overseeing the City.  The policy and practice is that the Chief of Police issues a decision, the discipline shall then become effective.  Here, Stec issued the written decisions implementing the aforementioned adverse action, and they were made effective by the City pursuant to its long-standing stated policy.  The City's policy expressly provides The Chief of Police with that final authority, such that their actions are attributable to the City, who created the policy.

35.    To that end, when exercising their authority, Stec acted pursuant to these expressly adopted official policies as well as longstanding practices or customs of the City that grant and delegate them as "the ultimate authority" with respect to implementing discipline against an officer.  See Ninth Circuit Manual of Model Civil Jury Instructions, 9.4.  In addition, Stec possessed final policymaking authority from the City with respect to discipline and performance of officers, as when carrying out these actions, acted as a final policymaker for the City.  See Ninth Circuit Manual of Model Civil Jury Instructions, 9.5.  *See also* L*ytle v. Carl*, 382 F.3d 978, 983 (9th Cir.2004) ("For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [City].").  Pursuant to policy and practice, their

FLSA COMPLAINT

actions are properly attributable to the City.

36. As a direct result of the Plaintiffs exercising their constitutional rights to free speech and participating in labor, organizational, social and political activities as a member and leader of the Association, Defendants took the adverse actions against him. Absent said protected speech, Plaintiffs would not have suffered adverse employment actions, and would not have been injured.

37. The various acts of intimidation, reprisal, retaliation, suppression and/or restraint exercised by Defendants against Plaintiffs has created a chilling effect on his legitimate political, social and organizational speech by creating fear, hesitation, hostility and other destructive responses.

38. In doing the things alleged herein, Defendants, and each of them, violated the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to free expression, association and assembly. Specifically, Defendants have taken the aforementioned action against Plaintiffs in direct retaliation for, and in response to the various protected activities of the Plaintiffs.

39. Based upon information and belief, the acts and omissions of Defendants, and each of them, were done by Defendants under color of state law and as final policy making authorities to which Defendant City delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed. The acts and omissions described above were taken by the City's official policy makers as members charged with such responsibility.

40. It was or should have been plainly obvious to any reasonable policy making official of City that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiffs' clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs'

FLSA COMPLAINT

rights, or at least in conscious, reckless, and callous disregard of Plaintiffs' rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof.  Punitive damages are sought against the individual defendants, according to proof.

41.    Plaintiffs have no plain, speedy nor adequate remedy at law to prevent future violations of his civil rights, and therefore seeks extraordinary relief in the form of permanent injunctions, as hereafter described.  Damages alone are inadequate and injunctive relief is sought to command Defendants to reinstate Plaintiff with full back pay and all benefits, in order to place him in a position he would have been in, absent the unlawful conduct by Defendants.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

12

FLSA COMPLAINT

## VI.

## PRAYER

WHEREFORE, Plaintiffs pray:

1.     For general, special, compensatory (including lost wages and benefits), statutory, exemplary and punitive damages according to proof;

2.     For injunctive relief as described above;

3.     For costs of suit;

4.     For attorneys fees as permitted by law; and

5.     For any and all other appropriate relief the Court deems necessary.

Dated:  September 15, 2017          Respectfully Submitted,

ADAMS FERRONE & FERRONE, APC


        /s/ Robert L. Baumann
Robert L. Baumann
Attorneys for Plaintiffs,
BRYAN ROSSY, et al.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial under F.R. Civ. P., Rule 38 and C.D. Cal. Rule 3.4.10.1.

Dated:  September 15, 2017          Respectfully Submitted,

ADAMS FERRONE & FERRONE, APC


        /s/ Robert L. Baumann
Robert L. Baumann
Attorneys for Plaintiffs,
BRYAN ROSSY, et al.

13

FLSA COMPLAINT