# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN ROSSY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BISHOP, et al.,<br><br>Defendants. | 1:17-CV-01244-LJO-SAB<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE**<br>**(ECF Nos. 9, 15, 16)** |

## I. <u>INTRODUCTION</u>

Plaintiffs, employees of the City of Bishop and the Bishop Police Department[1], Bryan Rossy ("Rossy"), Jared Waasdorp ("Wassdorp"), Mark Gutierrez ("Gutierrez") and Douglas Mairs ("Mairs") filed the complaint in this action on September 15, 2017. (ECF No. 1.) Therein, Plaintiffs asserted a claim against Defendants: Police Chief Chris Carter ("Chief Carter"), Police Chief Ted Stec ("Chief Stec"), Bishop City Mayor Pat Gardner ("Gardner"), Bishop City Administrator Jim Tatum ("Tatum"), and Does 1-10 for alleged violations of Plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege a claim against the City of Bishop ("City") for violations of their civil rights under 42 U.S.C § 1983.

On December 4, 2017, Defendants filed a motion to dismiss the complaint pursuant to Federal

---

[1] Plaintiffs were employed as Police Officers, with Plaintiff Mairs holding the rank of Sergeant. (ECF No. 1 at 2.)

1

Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6) along with a motion for a more definitive statement pursuant to Federal Rules of Civil Procedure 12(e) and (g). (ECF No. 9.) On February 6, 2018, Plaintiffs filed an opposition to Defendants' motion to dismiss. (ECF No. 15.) On February 13, 2018, Defendants filed a reply to Plaintiffs' opposition to the motion to dismiss. (ECF No. 16.) The matter was taken under submission on the papers pursuant to Local Rule 230(g). For reasons set forth below, Defendants' motion to dismiss is DENIED.

## II. **BACKGROUND**

The following facts are drawn from the complaint and the materials submitted with the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011). ("As a general rule, [a court] may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . [a court] may, however, consider materials that are submitted with and attached to the complaint.") (internal citations omitted).

In September 2015, Plaintiff Rossy was the President of the Bishop Police Officers Association ("Association" or "POA"), and the other Plaintiffs, Waasdorp, Guiterrez, and Mairs were members of the POA. On September 16, 2015, the Plaintiffs published a letter titled "LETTER OF NO CONFIDENCE IN BISHOP POLICE CHIEF CHRIS CARTER," (hereinafter, "the No Confidence Letter"), which explains the reasons why at least seven officers in the Bishop Police Department have "lost all trust, faith and confidence in Chief Chris Carter's ability to lead. . . ." (ECF No. 2.)

On October 3, 2015 Defendants Chief Carter and Tatum issued Plaintiffs a written notice advising them they were being placed on administrative leave "due to the letter of no confidence." (ECF No. 1 at ¶ 17.) An internal investigation into the allegations the officers made in the No Confidence

---

[2] Defendants' motion states that it is brought in part pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 9 at 1, 4.) However, Defendants make no argument as to how this court lacks subject matter jurisdiction, nor is any such argument plausible since this action is brought pursuant to 42 U.S.C. § 1983. *Howlett By & Through Howlett v. Rose,* 496 U.S. 356, 356 (1990) ("State as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983.").

2

Letter was opened and on October 9, 2015, Plaintiffs were given written notices by Gardner advising them that they were "witnesses" to the investigation. (*Id.* at ¶ 18.) On October 21, 2015, Plaintiffs gave involuntary statements to an investigator regarding the No Confidence Letter and their allegations of "corruption within the [Bishop Police] Department as well as [] within the City." (*Id.* at ¶ 19.)

Almost a year later, on October 19, 2016, the new Police Chief, Chief Stec "held a formal pre-disciplinary hearing with the Plaintiffs." (*Id.* at ¶ 23.) At the hearing, Plaintiffs argued that their activity was "protected First Amendment free speech and … [that] they were protected as whistleblowers." (*Id.*) On November 22, 2016, Plaintiffs "each received a letter of intent to discipline based on their letter of no confidence." (*Id.* at ¶ 20.) Plaintiffs state that the intent to discipline letter made it clear that because of their "participation in creating and publishing the letter of no confidence, the Plaintiffs were each being suspended for 24 hours with Mairs being advised he would be demoted from Sergeant. . . ." (*Id.*) Plaintiffs also claim that the discipline was recommended by Chief Stec in order to dissuade officers in the Bishop Police Department "from engaging in whistle blowing activities in the future." (*Id*. at ¶ 22.)

On September 15, 2017, Plaintiffs filed a complaint alleging two causes of action for violations of their civil rights under 42 U.S.C § 1983. The first cause of action alleges that Defendants Chief Carter, Chief Stec, Gardner, and Tatum violated Plaintiff's constitutional rights to free expression and to petition the government under the First and Fourteenth Amendment by retaliating against them for publishing the No Confidence Letter. (*Id.* at ¶ 26.) The second cause of action alleges a claim for *Monell*[3] Liability against the City of Bishop for violating Plaintiff's constitutional rights pursuant to the decisions of the City's final policymakers. (*Id*. at ¶¶ 38, 39.)

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper

---

[3] *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978).

3

where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the pleading party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The inquiry is generally limited to the allegations made in the complaint. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To overcome a Rule 12(b)(6) challenge, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id*. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Id.* at 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562. To the extent that any defect in the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly

4

be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## IV. <u>ANALYSIS</u>

### A. <u>42 U.S.C § 1983: First Cause of Action Against Defendants Carter, Stec, Gardner, and Tatum</u>

Plaintiffs allege that the Defendants Chief Carter, Chief Stec, Gardner, and Tatum retaliated against them for participating in protected speech, specifically, for the act of publishing a letter of no confidence in the leadership of the Bishop Chief of Police, Chief Carter. Defendants argue that Plaintiffs failed to plead sufficient facts to support their § 1983 claim for a First Amendment violation claim.

To state a claim under § 1983, a plaintiff must allege that the conduct complained of was committed by a person acting under color of state law, and the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). Where a public employee is claiming that his first amendment rights have been violated, the Court applies a five-step test to balance the government's rights as an employer and the plaintiff's rights as a citizen. The plaintiffs bear the burden of showing that: (1) the speech addressed a matter of public concern; (2) the speech was spoken in the capacity of a private citizen and not a public employee; and (3) the state took adverse employment action and the speech was a substantial or motivating factor in the adverse action. If the plaintiff has alleged the first three steps, the burden shifts to the government to show (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley,* 552 F.3d 1062, 1070-72 (9th Cir. 2009). Because plaintiff's failure to satisfy one of the first three steps "necessarily concludes [the] inquiry," *Huppert v. City of Pittsburgh*, 574 F.3d 696, 703 (9th Cir. 2009) (*overruled on other grounds by Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir.

2013)), the court addresses the first three steps only.

1. **Public concern**

The first step of the *Eng* inquiry asks "whether the plaintiff spoke on a matter of public concern." *Eng*, 552 F.3d at 1070. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "If employee expression relates to an issue of political, social, or other concern to the community, it may fairly be said to be of public concern." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998) (internal quotation marks omitted). However, "[a]n employee's motivation [is] relevant to the public-concern inquiry." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 715 (9th Cir. 2009) (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999)). The Ninth Circuit, in *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015), has framed that inquiry with two questions: "[W]hy did the employee speak (as best as we can tell)? Does the speech 'seek to bring to light actual or potential wrongdoing or breach of public trust,' or is it animated instead by 'dissatisfaction' with one's employment situation?" *Desrochers*, 572 F.3d at 715 (quoting *Connick*, 461 U.S. at 148, 103).

In answering the questions posed in *Turner*, Plaintiffs clearly state the reasons for their speech in the No Confidence Letter itself. Plaintiffs state that they were speaking out about the corruption and cronyism Chief Carter fostered within the Bishop Police Department, and outlined the detrimental effect the Chief's policies have had on the community.

> By fostering an atmosphere of hostility, retaliation and unethical behavior Chief Carter has brought morale to an all-time low. Retention and recruitment of qualified personnel is suffering. That in turn <u>jeopardizes the safety of the community</u> … The Bishop Police Department used to be one of great pride for those who work here and was looked upon by outside law enforcement Officers as a solid agency that was a desirable place to work. The Police Department recently hired a new Officer – the ONLY person according to Chief Carter to apply for the position. In this line of work, good Officers move toward problems, but not toward problem Departments.

6

(ECF No. 2 at 1) (emphasis added).

In their motion to dismiss, Defendants do not argue that the Officers' speech was not a matter of public concern. Therefore, construing the facts in the light most favorable to the pleading party, *Cahill* 80 F.3d at 337-38, this Court finds that Plaintiffs are not simply complaining about dissatisfaction with their working conditions.[4] Rather, Plaintiffs have alleged sufficiently that the management practices of Chief Carter, continued or ratified by the other defendants, directly affected department morale as well as the hiring of new officers, which in turn affected the agency's ability to respond to the community of Bishop as a whole. Thus, Plaintiffs' speech involved a matter of public concern.

### 2. **Speech as Private Citizen or Public Employee**

The second step of the *Eng* inquiry is "whether the plaintiff spoke as a private citizen or public employee." *Eng*, 552 F.3d at 1070. Speech made "in [one's] capacity as employee and not citizen" is "not protected because any restriction on that speech 'simply reflects the exercise of employer control over what the employer itself has commissioned.'" *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 422); *see also Garcetti*, 547 U.S. at 421-22 (The first amendment "does not invest [public employees] with a right to perform their jobs however they see fit"); *Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1013 (9th Cir. 2000) ("Simply because the government opens its mouth to speak does not give every outside individual or group a First Amendment right to play ventriloquist."). Thus, if the court finds that plaintiff "spoke as a public employee, not as a citizen," its "inquiry [under *Eng*] is at an end." *Johnson*, 658 F.3d at 966.

In *Dahlia v. Rodriguez*, the Ninth Circuit articulated three guiding principles for evaluating whether an individual speaks as a private citizen or a public employee. 735 F.3d 1060, 1074-75 (9th Cir. 2013). Courts must consider "[(1)] whether the employee confined her communications to the

---

[4] This case can be distinguished from *Desrochers v. City of San Bernardino*, where the court found that Police Officers speech was not protected because "[b]oiled down to its essence, the speech at issue reflects dissatisfaction with a superiors management style and the ongoing personality dispute which resulted." 572 F.3d 703, 714 (2009). In the current case, Plaintiffs allege a hiring problem which directly affects the Police Department's capability to protect the community.

7

chain of command; [(2)] whether the employee spoke about routine issues or raised broad concerns about, for example, systemic abuse or corruption; and [(3)] whether the employee spoke in direct contravention to a supervisor's orders." *Heath v. City of Desert Hot Springs,* 618 F. App'x 882, 885 (9th Cir. 2015) (citing *Dahlia*, 35 F.3d at 1074-75). The application of the *Dahlia* principles compels the conclusion that Plaintiffs spoke as private individuals and not as a public employees.

First, Plaintiffs did not confine their communications to the chain of command. The No Confidence Letter was addressed to a number of outside agencies including the Bishop City Council and various media outlets. (ECF No. 2 at 1.) Thus, Plaintiffs satisfied the first *Dahlia* factor.

Second, in the No Confidence Letter, Plaintiffs raised broad concerns about systemic abuse of power, cronyism, and corruption by Chief Carter, rather than routine administrative matters. Thus, Plaintiffs satisfied the second *Dahlia* factor.

Third, as to whether Plaintiff's speech was in direct contravention of their supervisor's orders, there is no direct evidence on this issue. In their complaint, Plaintiffs allege that they were all "placed on administrative leave due to the letter of no confidence." (ECF No. 1 at ¶ 17.) Plaintiffs also allege that after Chief Carter was replaced by Chief Stec, there was a continuing effort to "dissuade officers… from engaging in whistle blowing activities." (*Id.* at ¶ 22.) Because Plaintiffs allege disciplinary action taken against them for their speech, it is not plausible to assume Defendants gave Plaintiffs permission to publish the No Confidence Letter. Therefore, at the very least, this factor is neutral.

Defendants urge this Court to find that Plaintiffs were speaking as public employees, not private citizens. Defendants first argue that the only speech actually described in the complaint is Rossy's, as the other Plaintiffs allege that their speech is "supportive and similar to that of ROSSY," thus "[t]his lack of any factual details about the other Plaintiffs' speech renders the First Cause of Action insufficient." (ECF No. 9 at 7.) This argument is unpersuasive because all Plaintiffs signed the No

Confidence Letter, which was attached as an exhibit to the complaint.[5] (ECF No. 2.) Thus the specific statements that all Plaintiffs made have been alleged sufficiently.

Defendants then argue that the No Confidence Letter was not protected speech because it was drafted and published by Plaintiffs, not by the POA police union. (ECF No. 9 at 7.) Citing *Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013), both parties agree that a vote of no confidence made by <u>a union</u> is protected speech under the First Amendment. (ECF No. 1 at ¶ 17; ECF No. 9 at 12.) However, whereas Plaintiffs contend the No Confidence Letter was issued by the POA, Defendants point out that "the Complaint only indicates that the Letter of No Confidence was drafted and published by Plaintiffs, not the union as is required." (ECF No. 9 at 7.) This argument is again unpersuasive. Though the No Confidence Letter does not say it is from the POA, it is plausible to infer that it was drafted and published on behalf of the union since it is signed by what appears to be seven members of the POA, including its president, Plaintiff Rossy. In addition, *Ellins* simply affirms that a vote of no confidence made by a union is protected speech because participating in a union is not an official duty of a police officer. 710 F.3d at 1058. It does not foreclose the possibility that speech may be protected when issued outside of a union. Here, even if Plaintiffs issued their No Confidence Letter as individuals, their speech would still be considered protected because it satisfies the *Dahlia* factors.

Defendants next argue that "part of Plaintiffs' official duties as police officers is to investigate and report criminal acts such as the corruption alleged here and, thus, are part of Plaintiffs' police officer functions." (ECF No. 9 at 7.) To support their argument, Defendants cite *Hong v. Grant*, which holds that an "employee's official duties are construed broadly to include those activities that an employee undertakes in a professional capacity to further the employer's objective." 516 F. Supp. 2d 1158, 1166 (C.D. Cal. 2007), *aff'd*, 403 F. App'x 236 (9th Cir. 2010). Here, we turn again to *Eng*, which instructs that "if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the

---

[5] Pursuant to the Federal Rules of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

9

product of 'performing the tasks the employee was paid to perform,'" then a public employee speaks as a private citizen. 552 F.3d at 1071 (internal citation omitted); *see also Ellins*, 710 F.3d at 1058. In finding that Plaintiffs' speech satisfies the *Dahlia* factors, and that it is plausible the No Confidence Letter was issued by the POA, this Court finds that drafting and publishing the No Confidence Letter was outside the scope of normal police officer functions. Accepting Defendant's reading of the law on this issue would preclude any police officer from ever speaking out as an individual citizen on a matter of alleged public corruption within the jurisdiction he or she polices. This cannot be the law.

Defendants also argue that Plaintiffs have not pled "sufficient facts about their respective job duties to enable the court to determine whether the statements were made as a public employee or as a private citizen." (ECF No. 9 at 7-8.) Though Plaintiffs have not provided a complete job description within their complaint, this is not necessary for first amendment purposes. *See Garcetti* 547 U.S. at 425 ("[T]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.").

Citing *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006), Defendants point out that "[t]he Ninth Circuit has interpreted *Garcetti* to hold that internal complaints about supervisory mismanagement are within an employee's official duties and not subject to First Amendment Protection." (ECF No. 9 at 8.) This Court agrees that if this was simply an internal matter, constitutional protections would not apply because Plaintiffs would be acting as employees, not private citizens. Articulating the difference between internal complaints and external communication, the Ninth Circuit stated in *Dahlia* that "[w]hen a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." 735 F.3d at 1074. The Ninth Circuit further explained that:

> "[G]enerally, 'when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job,' *Davis v. McKinney*, 518

10

> F.3d 304, 313 (5th Cir.2008), although 'it is not dispositive that a public employee's statements are made internally,' *id.* at 313 n. 3. 'If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.' *Id*. at 313."

*Dahlia*, 735 F.3d at 1074. Here, the No Confidence Letter was addressed to a number of outside agencies and the Bishop City Council, not the Plaintiffs' chain of command. (ECF No. 2 at 1.) Furthermore, Defendants' contention on this point is foreclosed by this Court's earlier finding that the No Confidence Letter was plausibly issued by the POA. *See Ellins*, 710 F.3d 1049, 1060 (9th Cir. 2013) ("we conclude that a police officer does not act in furtherance of his public duties when speaking as a representative of the police union.") Thus, this Court must hold that the Plaintiffs were speaking outside of their official duties as police officers.

### 3. <u>**Substantial or Motivating Factor for Adverse Employment Action**</u>

The third step of the *Eng* inquiry, and the final issue challenged by Defendants is "whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Eng*, 552 F.3d at 1070. "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

Defendants argue that the complaint does not detail sufficiently the alleged acts of retaliation and therefore does not allege sufficiently that Defendants acted in a discriminatory manner, or that the discrimination was intentional. (ECF No. 16 at 3.) Here, Plaintiffs have alleged that because they published the No Confidence Letter, they faced retaliation in the form of an "intent to discipline" letter, a 24 hour suspension, a formal pre-discipline hearing, at least one demotion, and placing Plaintiffs on administrative leave. (ECF No. 1 ¶¶ 17, 20, 23, 25.) Plaintiffs have alleged a close proximity in time between the speech and the discipline they received, (*id.* ¶ 17,18,) and have also alleged that "Defendants admitted that they took this adverse action due to the protected speech." (*Id.* ¶ 17.) For the

purposes of their complaint, Plaintiffs have alleged plausibly that they suffered an adverse employment action, and that the adverse employment actions were motivated in substantial part by the No Confidence Letter. Therefore, the third *Eng* factor has been met and Plaintiffs have sufficiently pleaded a claim for first amendment retaliation.

**B.        42 U.S.C § 1983:  Second Cause of Action Against Defendant City of Bishop**

In their second cause of action, Plaintiffs allege that the City of Bishop faces municipal § 1983 liability because the acts of retaliation alleged were taken by the City's official policy makers. Relevant here, Plaintiffs allege that "[t]he City's policy expressly provides The Chief of Police with that final authority, such that their actions are attributable to the City . . ." (ECF No. 1 ¶ 34.)  In opposing Plaintiffs' § 1983 municipal liability claim, Defendants simply state that the facts alleged are insufficient to state a claim for relief. (ECF No. 9 at 10.)

Municipalities are included among those persons to whom § 1983 applies. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). While municipalities are protected against vicarious liability, § 1983 "imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights." *Id.* at 691-92 (internal quotation marks omitted). Municipal liability under *Monell* may be premised on "a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision." *Gonzalez v. Cty. of Merced*, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7, 2017);  *see also Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

Whether an official is a policymaker for *Monell* purposes is a question governed by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'" *Id*. (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)). As to matters

of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991); *see also Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) ("As to the City, the policies of the Police Department became its policies because the policies set by the Department and its Chief may be fairly said to represent official [City] policy on police matters . . . and the City is liable for any deprivation of constitutional rights caused by the execution of official City policies.") (internal citations omitted).

Here, Plaintiffs allege that the policy of the City of Bishop "is that [the Chief of Police] shall be considered 'the ultimate authority' on behalf of the City . . ." (ECF No. 1 at ¶ 34.) Plaintiffs also specifically allege that in the City of Bishop, the Chief of Police is delegated "final policy making authority with regard to imposing discipline." (ECF No. 1 ¶ 33.) Plaintiffs further state that Chief Stec "issued the written decisions implementing the aforementioned adverse action …" *Id*. As discussed above, Plaintiffs have plausibly connected the adverse employment actions they received with the publishing of the No Confidence Letter. Because Plaintiffs have alleged that the Chief of Police was acting as a final policymaking authority for the City of Bishop on police matters, and disciplined Plaintiffs after publishing the No Confidence Letter, Plaintiffs have stated a plausible claim for § 1983 municipal liability for Defendant City of Bishop.

## C. **Defendants' Motion For A More Definite Statement Under Rule 12(e)**

Both the individual Defendants and the City of Bishop move in the alternative for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Prior to filing a responsive pleading, a party may move under Federal Rule of Civil Procedure 12(e) for a more definite statement of a pleading if it "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely lacking detail. *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005). Where the complaint is specific enough to apprise the responding party of the substance of the claim being asserted or where the

detail sought is otherwise obtainable through discovery, a motion for a more definite statement should be denied. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) ("Due to the liberal pleading standards in the federal courts embodied in Federal Rule of Civil Procedure 8(e) and the availability of extensive discovery, the availability of a motion for a more definite statement has been substantially restricted."). Thus, motions pursuant to Rule 12(e) are generally "viewed with disfavor and are rarely granted[.]" *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

In requesting a more definite statement, Defendants first argue that Plaintiffs' "First Cause of Action fails to identify what acts Gardner is alleged to have committed." (ECF No. 9 at 11.) However, the complaint alleges that "Plaintiffs were given written notices by Gardner, acting under the authority of Tatum and Carter, advising they were 'witnesses' to an internal investigation into their allegations of corruption within." (ECF No. 1 at ¶ 18.) What Plaintiffs have alleged with regards to Gardner's conduct may be lacking in detail but, it is not unintelligible. Therefore, Plaintiffs are not required to submit a more definite statement.

Defendants also argue that the complaint fails to identify which "specific named defendant is purported to have committed certain acts, preventing [] Defendants from determining what contentions are asserted against them." (ECF No. 9 at 11.) The Court notes that the complaint alleged that Chief Carter initiated discipline, Tatum knew about the discipline, and Chief Stec followed through with the discipline. (ECF No. 1 at ¶¶ 17, 23.)

Defendants then argue that "Plaintiffs conclude they were subject to discipline, but offer no facts as to what this purported discipline entailed." (ECF No. 9 at 11.) As noted above, Plaintiffs have alleged that because they published the No Confidence Letter, they were disciplined in the form of an 'intent to discipline' letter, a 24 hour suspension, a formal pre-discipline hearing, potentially one demotion, and being placed on administrative leave. (ECF No. 1 at ¶¶ 17, 20, 23.)

Finally Defendants argue that Plaintiffs prayer for relief is flawed because "no allegation [has

been] made that Plaintiffs have been removed from their public employment positions." (ECF No. 9 at 11.) While it appears that this may be a typographical error in the complaint, adverse employment actions take many forms and Defendants are entitled to develop the record with discovery. Even if Plaintiffs were not removed from their positions, letters of reprimand and internal investigations can have a very real impact on the career of a public employee. This Court finds that the complaint is specific enough to apprise Defendants of the substance of their claim and therefore, Defendants' motion for more definite statement is DENIED.

## V. **CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that:

 **1.** Defendants' Motion to Dismiss is DENIED; and

 **2.** Defendants' Motion for a More Definite Statement is DENIED.

IT IS SO ORDERED.

Dated: __**April 3, 2018**__  _____**/s/ Lawrence J. O'Neill**_____
 UNITED STATES CHIEF DISTRICT JUDGE