# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRYAN ROSSY; MARK GUTIERREZ; JARED WAASDORP; AND DOUGLAS MAIRS,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF BISHOP; CHRIS CARTER; TED STEC; JIM TATUM; AND PAT GARDNER,**<br><br>**Defendants.** | 1:17-cv-01244-LJO-SAB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 34, 45) |

## I. INTRODUCTION

Plaintiffs, police officers employed by the City of Bishop, Bryan Rossy ("Rossy"), Jared Waasdorp ("Wassdorp"), Mark Gutierrez ("Gutierrez") and Douglas Mairs ("Mairs") (collectively "Plaintiffs") filed the complaint in this action on September 15, 2017. ECF No. 1. Therein, Plaintiffs asserted two causes of actions against Defendants Police Chief Chris Carter ("Carter"), Police Chief Ted Stec ("Stec"), Bishop City Mayor Pat Gardner ("Gardner"), Bishop City Administrator Jim Tatum ("Tatum"), and the City of Bishop ("City") (collectively "Defendants"). The first cause of action pursuant to 42 U.S.C § 1983 ("§ 1983") alleges that Defendants Carter, Stec, Gardner, and Tatum violated Plaintiffs' constitutional rights to free expression and to petition the government under the First Amendment by retaliating against them for publishing a Letter of No Confidence in the Police Chief. ECF No. 1. The second cause of action also pursuant to § 1983

1

alleges a claim for *Monell*[1] liability against the City for violating Plaintiffs' first amendment rights pursuant to the decisions of the City's final policymakers, namely the Chief of Police. *Id.*

The Court previously denied Defendants' motion to dismiss the complaint. ECF No. 18. On December 18, 2018, Defendants moved for summary judgment on both causes of action. ECF No. 34. Plaintiff filed an opposition on January 2, 2019, ECF No. 35, along with a motion to strike and motion for sanctions. ECF Nos. 36-37. The Court issued a minute order denying the motion to strike and motion for sanctions, ordering the parties to meet and confer concerning a joint statement of undisputed facts, and allowing the parties to file a stipulation to file amended briefs based on a joint statement of facts. ECF No. 40. The parties conferred and filed a joint statement of undisputed facts. ECF No. 41-1. On January 15, 2019, Defendants filed an amended motion for summary judgment and Plaintiffs filed an amended opposition based the joint statement of facts. ECF Nos. 45-47. Before amending, Defendants had previously filed a reply on January 9, 2019 and never amended their filing. ECF No. 44. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and the matter is now ripe for review. The Court deems the matter appropriate for resolution without oral argument. *See* E.D. Cal. L.R. 230(g). Having carefully considered the record in this case, the parties' briefing, and the relevant law, the Court grants in part and denies in part Defendants' motion.

## II. FACTUAL BACKGROUND[2]

Plaintiffs were employed as police officers for the City of Bishop at the relevant times. Compl. ¶ 3.[3] On September 16, 2015, Plaintiffs, along with three other non-parties, prepared and circulated a

---

[1] *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978).
[2] The parties' statement of undisputed facts does not provide a clear background of what occurred but to the extent possible the Court herein cites to the joint statement of undisputed facts. ECF No. 41-1, ("JUF"). Alternatively, the Court also refers to the separate statement of facts that Defendants originally submitted to which Plaintiffs responded. ECF No. 35-1, ("UF"). However, because the parties have failed to set out the relevant factual context in their submissions, the Court also resorts to citing to the Complaint solely for the purpose of providing relevant context and not for the purpose of making factual findings on facts that appear to be either immaterial or not the subject of a genuine dispute. ECF No. 1, ("Compl.").
[3] Mairs held the rank of police sergeant. *Id.*

2

"Letter of No Confidence in Bishop Police Chief Chris Carter" (hereinafter "the Letter"), alleging corruption by Carter, Tatum, and City Councilman Pesci (who is not named as a Defendant here). JUF 1. The Plaintiffs, who were all members of the Bishop Police Officers Association ("POA"), submitted the letter as individuals rather than as members of the POA. JUF 2; *see also* Compl. ¶¶ 14-16. The letter explained why at least seven officers in the Bishop Police Department have "lost all trust, faith and confidence in Chief Chris Carter's ability to lead. . . ." ECF No. 2.[4] Plaintiffs' letter states that they were speaking out about the corruption and cronyism Chief Carter fostered within the Bishop Police Department, and outlined the detrimental effect the Chief's policies have had on the community.

> By fostering an atmosphere of hostility, retaliation and unethical behavior Chief Carter has brought morale to an all-time low. Retention and recruitment of qualified personnel is suffering. That in turn jeopardizes the safety of the community … The Bishop Police Department used to be one of great pride for those who work here and was looked upon by outside law enforcement Officers as a solid agency that was a desirable place to work. The Police Department recently hired a new Officer – the ONLY person according to Chief Carter to apply for the position. In this line of work, good Officers move toward problems, but not toward problem Departments.

ECF No. 2 at 1. After the Letter was published by local media outlets, on or about October 3, 2015, Carter and Tatum issued Plaintiffs a written notice advising Plaintiffs that they were being placed on administrative leave due to the letter of no confidence. JUF 4.[5] The City initiated an investigation into the allegations contained in the Letter and on October 9, 2015, Plaintiffs were given orders to appear as witnesses in the investigation. JUF 6. The orders to appear were signed by Defendant Gardner as Mayor. *Id.* Other than signing the orders to appear, Gardner had no further involvement with respect to Plaintiffs and has since passed away. JUF 7. It is otherwise not clear who initiated and was involved in the internal affairs investigation.

---

[4] The Letter of No Confidence was attached as an exhibit to the Complaint and the contents are not disputed. ECF No. 2.
[5] The Joint Statement of Undisputed Facts states that "Plaintiffs' Complaint alleges . . ." this fact and cites to the Complaint as the supporting evidence. JUF 4. Despite the confusing language in the form of an allegation and the citation to the complaint, the Court assumes this fact is true for the purposes of the summary judgment motion since it has been submitted by the parties in their joint statement of undisputed facts.

3

1    Plaintiffs all generally testified that they felt stressed and upset after sending the Letter because of being verbally harassed and threatened by members of the public and non-city employees. JUF 14. At some point after the initiation of the investigation, Plaintiffs were issued notices of intent to discipline; however the record does not make clear when these notices were issued and what exactly was proposed as discipline. *See* JUF 10. It also appears that after the initially proposed discipline the Plaintiffs received final notices of discipline; however it is again not clear when the notices were issued or what these final notices contained as they were not submitted by the parties as record evidence. *See* JUF 25. Plaintiffs submit that Stec issued the final notices of discipline and that they were held in abeyance for a period of six months but were not imposed ultimately. UF 21. Chief Carter retired sometime in October 2015 but continued to serve in his role of Chief for a period of time thereafter. *See* JUF 19. Other than as stated herein, the record is not altogether clear to what extent Chief Carter or Chief Stec or both were involved in issuing the proposed disciplinary notices and how or why the discipline was ultimately withdrawn.

Rossy, Gutierrez, and Waasdorp testified that they did not feel they could speak out regarding department misconduct and felt they had been silenced as a result of the notices of discipline. JUF 25. Plaintiffs were never placed on administrative leave after the Letter was published. JUF 5.[6] The proposed discipline was also never imposed on the Plaintiffs. *See* JUF 10.[7]

### III. **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

---

[6] It is not clear if administrative leave was part of the proposed discipline or whether the parties are just eliminating a potentially adverse employment action in this submission.
[7] The Court notes that based on its review of the submitted deposition testimony, Gutierrez left the Bishop police department at some point after discipline was threatened. ECF No. 45-1 at 42-56 (Ex. C), Deposition of Mark Gutierrez at 41:24-42:5.

determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV. DISCUSSION

**A. 42 U.S.C § 1983: FIRST CAUSE OF ACTION AGAINST DEFENDANTS CARTER, STEC, GARDNER, AND TATUM FOR FIRST AMENDMENT VIOLATION**

### 1. Legal Standard

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 638-39 (1980) (citation omitted). To succeed in asserting § 1983 claims, Plaintiff must demonstrate that the action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (citations omitted); *see also West*

*v. Atkins*, 487 U.S. 42, 48 (1988). Here, the parties do not dispute that the Defendants acted under color of state law, but Defendants dispute whether they violated the Plaintiffs' First Amendment rights.

Where a public employee is claiming that his first amendment rights have been violated, the Court applies the five-step test articulated in *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) to balance the government's rights as an employer and the plaintiff's rights as a citizen. The plaintiffs bear the burden of showing that: (1) the speech addressed a matter of public concern; (2) the speech was made as a private citizen rather than as a public employee; and (3) the speech was a substantial or motivating factor for the adverse employment action. *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1098 (9th Cir. 2018) (citing *Eng*, 552 F.3d at 1070-71).[8] If the plaintiff makes out a prima facie case by meeting the first three prongs, the burden then shifts to the government to demonstrate that (4) the government had an adequate justification for treating the employee differently from other members of the public or (5) that the government would have taken the adverse employment action even in the absence of the protected speech. *Id.* (citing *Eng*, 552 F.3d at 1072).

As the moving party, Defendants bear the initial burden on summary judgment of pointing out "an absence of evidence to support [Plaintiff's] case." *Celotex*, 477 U.S. at 325. It is also Defendants' burden to prove that they are entitled to qualified immunity. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

### 2. **Application**

Since Defendants do not challenge the first two *Eng* factors for the purposes of this summary judgment motion, the Court assumes that Plaintiffs' speech concerned a matter of legitimate public concern and the speech was made as private citizens rather than as public employees. In their motion, Defendants only challenge the third factor in *Eng* – whether the speech was a substantial or motivating

---

[8] The Ninth Circuit has also articulated these factors in an alternative fashion as requiring a plaintiff to show "(1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

6

factor for the adverse employment action. ECF No. 45 at 12. Specifically, Defendants contend that Plaintiffs were not subjected to any adverse employment actions as a result of their Letter and therefore cannot establish an essential element of their first amendment retaliation claim. *Id.* Defendants argue that because Plaintiffs all admitted that they were not placed on administrative leave, were not denied overtime, given negative performance reviews, their terms of employment were not changed, they were not denied pay increases, and no discipline was ever imposed on them, they cannot show that they suffered any real adverse employment action. *Id.* at 13.[9]

In Plaintiffs' response to Defendants' original statement of undisputed facts they submit that "Stec did issue final notices of discipline against the Plaintiffs where he held the discipline in abeyance for a period of 6 months. Although that specific discipline was not imposed ultimately, the Plaintiffs still received final notices that contained sustained allegations against them, which is in fact discipline in a form of a written reprimand and further had a negative impact on the Plaintiffs." ECF No. 35-1 at UF 21. Plaintiffs also point to the internal affairs investigation as a potentially adverse employment action. ECF No. 46 at 12.[10]

Unfortunately, neither party has submitted a clear statement of the evidence as to what *did* occur in connection with the "proposed discipline" or what this "proposed discipline" was, when exactly it was received by Plaintiffs, when it was withdrawn or why. *See* JUF 10. After review of the submitted portions of the officers' deposition transcripts, the Court at best can surmise the following occurred: Within a month of the publication of the Letter of No Confidence, the Plaintiffs were ordered to appear as witnesses as part of an internal affairs investigation. It is not clear what the exact scope or nature of the

---

[9] This third step of the *Eng* test has a sub-element that is not at issue here: whether the plaintiff's speech was a *substantial or motivating factor* in the adverse employment action. Because Defendants have not raised this aspect of the element in their brief the Court does not reach it here. *See, e.g.*, *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079, n.24 (9th Cir. 2013).

[10] Plaintiffs' briefing also mentions that the investigation had a chilling effect on speech because it must be disclosed in future job applications and further contend that the Plaintiffs, aside from Mairs, were all passed over for promotion to Sergeant. ECF No. 46 at 12-13. There is no evidence submitted by Plaintiffs in support of these contentions so the Court does not independently address them here as potential adverse employment actions.

7

internal affairs investigation was. At some point after that, potentially as a result of the Plaintiffs' internal affairs interviews, there was discipline that was proposed against Plaintiffs. It also appears that Plaintiffs were issued notices of intent to discipline followed by a final notice of intent to discipline and that the discipline was held in abeyance for a period of six months. While neither party bothered to submit the notices of intent to discipline into evidence, it appears that the proposed discipline, at least in one instance, was 24 hours leave without pay. ECF No. 45-1 at 32, Rossy Dep. Tr. 33:21-22. The parties' undisputed facts also indicate that the Plaintiffs received notices they were being placed on administrative leave within a month of the Letter. JUF 4. Ultimately, the proposed discipline was never imposed but it is not clear how the situation was resolved, if or when the discipline was formally withdrawn, or if it just never occurred to date. Plaintiffs also submit that after the investigation and final notices of intent to discipline they did not feel they could speak out regarding department misconduct. JUF 25.

Defendants' legal argument for summary judgment boils down to the contention that because the threatened discipline was only proposed but never imposed, there was no adverse employment action taken against Plaintiffs. The Ninth Circuit in *Coszalter v. City of Salem* addressed what constitutes an "adverse employment action" in the context of a first amendment retaliation claim:

> The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights. Various kinds of employment actions may have an impermissible chilling effect. Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights. To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden.

320 F.3d 968, 974–75 (9th Cir. 2003) (quoting *Rutan v. Republican Party*, 497 U.S. 62, 73 (1990)). "The denial of even a 'trivial' benefit may form the basis for a First Amendment claim where the aim is to punish protected speech." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002) (citation omitted); *see also Rutan*, 497 U.S. at 75-76, n.8 (noting "the First Amendment . . . protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing

8

to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights."); *Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976) (explaining that First Amendment rights are violated "both where the government fines a person a penny ... and where it withholds the grant of a penny" to punish or suppress protected speech). The Ninth Circuit in *Coszalter* held that the proper test for what constitutes an adverse employment action for purposes of a valid § 1983 first amendment employer retaliation claim is "any action 'reasonably likely to deter employees from engaging in protected activity.'" 320 F.3d at 976 (quoting *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 847 (9th Cir. 2002)). In its holding the Ninth Circuit specifically indicated that a *threat* of disciplinary action, even when *considered individually*, may constitute an adverse employment actions under the "reasonably likely to deter test." *Id.* at 976 (internal quotation marks omitted) (indicating that "[u]nder the 'reasonably likely to deter' test, some, perhaps all, of the following acts, considered individually, were adverse employment actions for purposes of plaintiffs' First Amendment retaliation suit" including "an unwarranted disciplinary investigation"; "a reprimand containing a false accusation"; "repeated and ongoing verbal harassment and humiliation"; "a threat of disciplinary action"; "an unpleasant work assignment"; "a withholding of customary public recognition"; and "an unwarranted disciplinary action")).

The Defendants' briefing focuses on what kinds of adverse employment actions did not occur in this case by pointing out that Plaintiffs were not placed on administrative leave, denied overtime, given negative performance reviews, and were not denied pay increases. ECF No. 45 at 13. Defendants fail to address whether threatening discipline following an internal affairs investigation, which occurred here, is "reasonably likely to deter employees from engaging in constitutionally protected speech." *Coszalter*, 320 F.3d at 970. Defendants have not cited to any legal authority for the argument that an unconsummated threat of discipline could never qualify as an adverse employment action. Nor does their legal argument align with the general reasoning in the authority for what constitutes an adverse employment action. The fact that a threat or proposal of negative action does not come to fruition does not disqualify it from

9

constituting an adverse employment action. In the context of first amendment retaliation claims "we do not focus on the 'ultimate effects' of each employment action, but on the 'deterrent effects.'" *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000)) (holding that delaying police officer's five percent pay raise for approximately three months was sufficient evidence of an adverse employment action to defeat summary judgment); *see also Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (finding "the severity of an action's ultimate impact (such as loss of pay or status) 'goes to the issue of damages, not liability'" in the context of a Title VII claim) (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997) ("we have squarely rejected a similar 'no harm, no foul' argument in the Title VII context" and concluding "that the retaliatory dissemination of a negative employment reference violates Title VII, even if the negative reference does not affect the prospective employer's decision not to hire the victim of the discriminatory action.").[11]

"[T]he proper inquiry [for whether something constitutes an adverse employment action] is whether the action is 'reasonably likely to deter employees from engaging in protected activity.'" *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) (quoting *Coszalter*, 320 F.3d at 976) (finding that "under some circumstances, placement on administrative leave can constitute an adverse employment action"). Under this test, it is clear that threatening negative action can constitute an adverse employment action even if it is not ultimately carried out. *See, e.g.*, *Ulrich,* 308 F.3d at 977 (holding that the plaintiff had been subjected to adverse employment actions when the defendant "subjected him to an investigation that threatened to revoke his clinical privileges" in addition to refusing to accept his revocation of resignation); *Konig v. Dal Cerro*, No. C-04-2210 MJJ, 2005 WL 2649198, at *17 (N.D. Cal. Oct. 11, 2005), *aff'd sub nom. Konig v. State Bar of California*, 256 F. App'x 900 (9th Cir. 2007) (finding that issuance of written warnings, a notice of disciplinary action, and decision to discipline Plaintiff by

---

[11] "[T]he test of adverse employment action in the First Amendment context is substantially similar to the test under Title VII." *Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009) (unpublished disposition).

suspending him even though it was never implemented, among other actions, were adverse employment actions).

On the incomplete and unclear record presented by the parties, the Court cannot make a meaningful substantive evaluation of whether the actions taken by the Police Chiefs, both Carter and Stec, subsequent to the Letter of No Confidence would be reasonably likely to deter an employee from engaging in free speech. Defendants' sole argument for summary judgement – that because discipline was proposed but never finally imposed, Plaintiffs suffered no adverse employment action – is not convincing nor does it withstand scrutiny under the reasonably likely to test. "A moving party without the ultimate burden of persuasion at trial—usually but not always the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. . . . If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins., Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). It is not the Court's responsibility to go through the deposition transcripts to piece together what the facts of the case are in order to assess whether an adverse employment action occurred. "Judges are not like pigs, hunting for truffles" buried in the record. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact") (citation omitted). Defendants' submission that the "proposed discipline by Stec was never actually imposed upon Plaintiffs after the letter" does not meet Defendants' burden to show that there are no material disputes of fact left for trial. *See* JUF 10. This legal argument is also without merit as discussed at length above. Having presented no convincing legal arguments as the basis for its motion for summary judgment, the Court DENIES the summary judgment motion as to Defendants Tatum, Carter, and Stec.

As to Defendant Mayor Gardner, the Court finds that summary judgement is appropriate. The parties' undisputed facts indicate that Plaintiffs were given orders to appear as witnesses in an

11

investigation and Mayor Gardner signed those order to appear. JUF 16. Other than signing the orders to appear, Gardner "had no further involvement with respect to Plaintiffs and has since passed away." JUF 17.[12] While personal participation is not the only predicate for § 1983 liability, absent personal participation in the constitutional deprivation there must be a sufficient causal connection between an individual's wrongful conduct and the constitutional violation. *See Henry A. v. Willden,* 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). "The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiffs do not argue that Gardner's signature on the order to appear somehow amounted to or caused constitutional violations. Therefore, since there is no evidence in the record that Defendant Gardner took any adverse employment actions against Plaintiffs, the Court GRANTS Defendants' motion for summary judgment as to the claims against the now-deceased Defendant Gardner.

Defendants have failed to meet their initial burden in moving for summary judgement that they are entitled to judgment as to Defendants Carter, Stec, and Tatum. Summary judgment is DENIED on the first cause of action against these Defendants and GRANTED as to Defendant Gardner.

### 3. **Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

---

[12] Neither party addresses the proper procedure for substitution of deceased parties under Federal Rule of Civil Procedure 25(a)(1) for Defendant Gardner but have submitted facts that allow the Court to dismiss his liability on the merits.

12

officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

To determine whether officers are entitled to qualified immunity, a court conducts a two-step inquiry. "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231. "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S at 201. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted). In making the qualified immunity determination, the Court still must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

"Because the moving defendant bears the burden of proof on the issue of qualified immunity, he or she must produce sufficient evidence to require the plaintiff to go beyond his or her pleadings." *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005). As discussed above, Defendants have not met their initial burden of producing sufficient evidence showing that they entitled to summary judgment in the first place. The limited facts, taken in the light most favorable to Plaintiffs, show that the threatened discipline may legally qualify as an adverse employment action. Since there are triable disputes as to whether the threatened discipline was reasonably likely to deter protected speech based on the record before the court,

13

the Defendants' argument that there was no constitutional violation fails to establish they are entitled to qualified immunity. *See* ECF No. 45 at 17. Defendants' argument fails the first step of the qualified inquiry in *Saucier*.

With regard to whether the law was clearly established, the Court cannot discern what Defendants are contending in this regard. ECF No. 45 at 17.[13] However, at least by 1989, "both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established." *Coszalter*, 320 F.3d at 979. No later than 2009, "it was also clearly established under both Supreme Court and Ninth Circuit precedent that 'the type of sanction ... need not be particularly great in order to find that rights have been violated.'" *Ellins*, 710 F.3d at 1065 (quoting *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir.1992) and citing *Elrod*, 427 U.S. at 359 n. 13). In *Lambert v. Richard*, a library employee appeared at a city council meeting on behalf of union where she gave a speech sharply criticizing library director's management practices, including stating that the "library was 'barely' functioning and that employees who dealt regularly with the public were performing 'devoid of zest, with leaden hearts and wooden hands.'" 59 F.3d 134, 136 (9th Cir. 1995). Shortly after her speech she was reprimanded by the library director and she brought a § 1983 first amendment claim against the director, city manager, and the city. *Id.* The Ninth Circuit held that "any reasonable official quickly would have recognized [the employee's] speech as one addressed to a matter of public concern," and that the director and manager were not entitled to qualified immunity because any reasonable official would have recognized their conduct in reprimanding her was unlawful. *Id.* at 137. If it was clearly established that "reprimanding" an employee for engaging in protected speech was a first amendment violation, then a reasonable official would also have recognized that issuing a notice of intent to discipline in response to an employee's protected speech would clearly constitute a first amendment violation.

---

[13] Defendants make a passing reference to "recommended discipline for disclosing confidential peace officer records" but have not otherwise provided a record of what this refers to and the Court will not make guesses about arguments the Defendants have not clearly articulated. ECF No. 45 at 17.

14

The Court DENIES Defendants' motion for summary judgment on the grounds of qualified immunity.

**B.     42 U.S.C § 1983: SECOND CAUSE OF ACTION AGAINST DEFENDANT CITY OF BISHOP FOR FIRST AMENDMENT VIOLATION UNDER *MONELL***

   **1.     Legal Standard**

Liability may attach to a municipality only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) ("The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."). A municipality cannot "be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Ulrich*, 308 F.3d at 984-85.

Whether an official is a policymaker for *Monell* purposes is a question governed by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'" *Id*. (quoting *Pembaur*, 475 U.S. at 483 (1986)). As to matters of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority. *Larez v.*

*City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991); *see also Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) ("As to the City, the policies of the Police Department became its policies because the policies set by the Department and its Chief may be fairly said to represent official [City] policy on police matters . . . and the City is liable for any deprivation of constitutional rights caused by the execution of official City policies.") (internal citations omitted).

### 2. **Application**

As an initial matter, the individual Defendants, Carter, Stec, Tatum and Gardner, are sued in both their individual and official capacities. The individual capacity claims are dealt with in Section IV.A above. An official capacity claim against the individual Defendants is equivalent to stating a *Monell* claim for entity liability against the City for an unconstitutional policy or custom. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Larez*, 946 F.2d at 646 ("A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself."). Plaintiffs' claim against the City of Bishop is based on a theory that the Chief of Police is delegated final policy making authority with regard to imposing discipline. Accordingly, "[w]ith respect to its liability for the [Plaintiffs'] constitutional injuries, the fate of the City hinges on [the Police Chief's] official capacity liability." *Larez*, 946 F.2d at 647.

Defendants argue that the City of Bishop is entitled to summary judgement on the second cause for the same reason it submits with regard to the first cause of action – that there has been no adverse employment action and therefore the Plaintiffs cannot show that the City had a custom or policy of acting against officers. ECF No. 45 at 18. The Court already found that the argument concerning the lack of an adverse employment action failed above. The Defendants make no other arguments concerning why they should be granted summary judgment on the *Monell* claim and do not bother to address the delegation theory of *Monell* liability that is the basis of Plaintiffs' second cause of action. Accordingly, the Defendants' motion for summary judgment with regard to second cause of action for *Monell* liability is similarly DENIED for the reasons set forth with respect to the first cause of action and with the exception

1  of the grant of summary judgment as to Defendant Gardner in his official capacity.

2  Defendants' motion for summary judgment as to the second cause of action against the City of
3  Bishop under the First Amendment is DENIED.

**C.      PUNITIVE DAMAGES**

Defendants' motion for summary judgment argues that there can be no punitive damages award without a viable underling claim for compensatory damages and further submits that there is no genuine issue of material fact that Defendants engaged in any conduct that warrants punitive damages. ECF No. 45 at 18-19. Plaintiffs' opposition does not address the issue of punitive damages raised by the Defendants in their motion.

Punitive damages may be awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1986)). A § 1983 punitive damages claim is subject to summary adjudication "where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1214 (E.D. Cal. 2008) (quoting *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999)). Punitive damages are only available against the Defendants in their individual capacity and are not available against City or equivalently against the Defendants in their official capacities. *See Larez*, 946 F.2d ta 640-41 ("punitive damages. . . are only available against a supervisory official in his individual capacity"); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials.")

Defendants have failed to submit a clear factual record of what occurred here and have failed to meet their initial burden on summary judgment. Plaintiffs are not required to respond with evidence when Defendants do not meet their initial burden of production or ultimate burden of persuasion. *See Nissan Fire & Marine Ins., Co., Ltd.,* 210 F.3d at 1102. As a result, Defendants are not entitled to summary

judgment with respect to punitive damages as to the individual Defendants that remain – Carter, Stec, and Tatum in their individual capacities. The Court cannot determine on the record presented by Defendants whether Defendants' conduct may potentially involve a reckless or callous indifference to federally protected rights as there are no details as to what actually occurred, including what the proposed discipline was. Plaintiffs are not entitled to punitive damages against the City or equivalently the Defendants in their official capacities.

Defendants' request for summary judgment on punitive damages is therefore DENIED as to the individual Defendants Carter, Stec and Tatum in their individual capacities and GRANTED as to the City.

## V. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF Nos. 34, 45) is **GRANTED IN PART** and **DENIED IN PART:**

1. Defendants' motion for summary judgment is **GRANTED** as to Defendant Gardner;

2. Defendants' motion for summary judgment is **GRANTED** as to the punitive damages claim against the City of Bishop, but **DENIED** as to Defendants Carter, Stec, and Tatum in their individual capacities; and

3. Defendants' motion for summary judgment is **DENIED** as to the remaining causes of action.

IT IS SO ORDERED.

Dated:   **February 22, 2019**              /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE